A95A1015. ARMENISE v. ADVENTIST HEALTH
SYSTEM/SUNBELT, INC. et al.
(466 SE2d 58)

ANDREWS, Judge.

Armenise fell and fractured his leg when he stepped in an ankle-deep depression in the ground which was hidden from view by thick grass. The fall occurred while Armenise was an invitee walking across a grassy area between a parking lot in front of Adventist Health System/Sunbelt, Inc. d/b/a Smyrna Hospital (the hospital) to an adjacent medical complex owned by M. P. Equities. The hospital owned the half of the grassy area bordering on the parking lot, and M. P. Equities owned the half closer to the medical complex. Although the depression in which Armenise stepped was located on the half of the grassy area owned by M. P. Equities, there was evidence that the hospital customarily inspected and maintained the entire grassy area. Armenise sued the hospital and M. P. Equities to recover for his injuries, claiming the defendants negligently failed to keep the premises in a safe condition for invitees. The trial court granted summary judgment in favor of both defendants and Armenise appeals.[1]

The evidence showed that the hazard at issue was a narrow trench-like depression approximately ankle deep and several feet in length. It was in a neatly mowed and maintained grassy area and was not visible because it was covered by thick grass. There was no evidence as to how the depression was formed or how long it had been there. Although there was evidence the depression was in the approximate area where an underground utility line had been placed when the hospital was built in 1972, there was no evidence the depression resulted from the presence of the utility line. The hospital's landscaping supervisor testified on deposition that he looked for and located

---

[1] We need not resolve any issues of possession and control of the property in question. For purposes of this appeal, we assume, without deciding, that both defendants, as either the owner or occupier of the property in question, had a duty to exercise ordinary care to keep the premises safe for invitees pursuant to OCGA § 51-3-1.

the depressed area after he learned of Armenise's fall and that the depression appeared to be a narrow grass-covered area where the ground had settled. He did not know the cause of the settlement or how long it had been there. Although there was evidence that other invitees frequently walked over the grassy area, there was no evidence that anyone had previously fallen, tripped, or slipped in the area of the hazard or in any other part of the grassy area.

The landscape supervisor also testified that he walked over and inspected the grassy area weekly, that he never discovered the grass-covered depression during his inspections, and that in order to find the depression after the fall he had to press around in the area with his feet until he pressed down the grass covering the depression. The following testimony was given by the landscape supervisor on cross-examination by plaintiff's counsel: "Q: You didn't see that trench or indentation out there. And I believe you testified in your affidavit that you surveyed the area every week? A: That's correct. Q: So it was not obvious and noticeable to you, was it? A: No, it wasn't. . . . Q: And you walked over and surveiled the area every week, didn't you? A: Right. Q: And you didn't see it? A: I didn't see this."

The landscape supervisor further testified on cross-examination as to the inspection he conducted to locate the depression after he learned of Armenise's fall: "Q: But it [the depression] was not readily observable to you until you pressed it down and stomped around and found it? A: We had to look for it. Q: And you had to press the grass down to find the indentation, didn't you? A: Yes."

In order for an invitee to recover for a proprietor's alleged negligence in failing to keep the premises safe, there must be proof that the proprietor had superior knowledge of the hazard which was the proximate cause of the invitee's injury. *Pound v. Augusta Nat.*, 158 Ga. App. 166, 167 (279 SE2d 342) (1981). Clearly, there was evidence that, despite exercising ordinary care for his own safety, Armenise was unable to discover and avoid the depression in which he stepped because it was covered by thick grass. Even if he was without knowledge of the hazard, under the superior knowledge rule, Armenise must prove the defendants had superior knowledge by showing they had either actual or constructive knowledge of the hazard. Since there is no evidence the defendants had actual knowledge of the hazard, this case hinges on proof of constructive knowledge.

Generally, constructive knowledge may be shown by two methods. The first method involves proof that an employee of the proprietor was in the immediate area of the hazard and had the means and opportunity to easily see and remove the hazard. *Mitchell v. Food Giant*, 176 Ga. App. 705, 708-709 (337 SE2d 353) (1985); *Winn-Dixie &c. v. Ramey*, 186 Ga. App. 257, 259 (366 SE2d 785) (1988). There is no evidence in the record that an employee of either of the defend-

ants could have easily seen and removed the hidden defect in this case. The second method is premised on the proprietor's "duty to inspect the premises to discover possible dangerous conditions of which he does not know and to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement and use of the premises." (Citations and punctuation omitted.) *Strickland v. Howard,* 214 Ga. App. 307, 308 (447 SE2d 637) (1994). Under this method of proving constructive knowledge, the evidence must show that the hazardous condition existed on the premises for a sufficient period of time such that a proprietor exercising ordinary care to inspect the premises should have discovered and removed the hazard. *Lonard v. Cooper & Sugrue Properties,* 214 Ga. App. 862, 863-864 (449 SE2d 348) (1994). Thus, even if a defect is hidden or obscured from view, if the evidence shows that the proprietor should have discovered it by a reasonable inspection of the premises, then an inference will arise from the breach of the duty to inspect the premises and keep it safe that the proprietor has constructive knowledge of the presence of the defect. Id.; see *Food Giant v. Cooke,* 186 Ga. App. 253, 255 (366 SE2d 781) (1988).

However, in the fulfillment of the duty to inspect the premises and keep it safe from defects, including hidden defects, the law requires only that the proprietor exercise ordinary care, not extraordinary care. OCGA § 51-3-1. "In other words, one is not chargeable with negligence in failing to discover and remedy a danger in the property which he could not have discovered by the exercise of ordinary care, or which has not existed for a sufficient time to charge him with the duty of discovering it." *McCrory Stores Corp. v. Ahern,* 65 Ga. App. 334, 336 (15 SE2d 797) (1941). In this case, the nature of the depression in the ground and the fact that it was covered by thick grass were sufficient to show that the hazard had existed on the property for an extended period of time during which the defendants had a duty to inspect the property and, in fact, did inspect the property on numerous occasions. Accordingly, the issue is whether in the exercise of ordinary care the defendants should have discovered the hidden defect.

There was evidence showing that the hospital assumed responsibility for inspecting and maintaining the grassy area where the hazard existed. The hospital cut the grass in the area, and, on a weekly basis, the hospital's landscape supervisor walked over the area and inspected it. Despite these efforts, the grass-covered depression in which Armenise stepped was not discovered. The landscape supervisor testified that, after learning of the accident in the area, he had to search around in the area to find the narrow depression and was able to locate it only by stepping around and pressing down with his feet in the area where Armenise fell until his foot actually pushed down

the grass covering the depression.

The defendants exercised ordinary care by conducting inspections of the premises which were reasonable under the circumstances. There was no evidence that the grassy area presented any kind of hazard requiring a closer inspection since no one else had tripped or fallen in the area. Despite conducting a reasonable inspection of the premises, the defendants simply failed to discover the hidden hazard. This is not negligence. To hold otherwise would be to impose a duty on the defendants to anticipate the existence of a hazard which they had no reason to believe existed or to impose a duty to exercise extraordinary care to inspect the premises by physically pressing down the grass on every square foot of the property to discover the possible existence of an obscured depression or indentation in the ground. "Thus, where, as here, there was no actual knowledge of the alleged dangerous and unsafe condition, and there is nothing in the [record] to show or indicate the propriety or necessity of making an inspection to ascertain the possible or probable existence of any defect, such as that other people had tripped or fallen [in the same area], ordinary diligence did not as a matter of law, under the facts [as shown], require an inspection [sufficient to reveal the defect] where the defendant[s] had no reason to think [such] an inspection was necessary." *McCrory Stores Corp.*, supra at 340; *Lonard*, supra at 864-865.

The case of *Lawless v. Sasnett*, 200 Ga. App. 398 (408 SE2d 432) (1991), cited by Armenise as authority requiring reversal of the trial court, is distinguishable on its facts. In that case, which reversed the grant of summary judgment to the defendant proprietors, there was evidence that the obscured hazard was a knee-deep hole in the ground that would have been visible to the plaintiff had the defendants not negligently let the surrounding grass grow to a height of approximately one foot.

Since the hazard in this case was not discoverable by the defendants, despite the exercise of ordinary care in inspecting the premises, there is no basis for concluding that the defendants had constructive knowledge of the hazard. In the absence of any evidence that the defendants had actual or constructive knowledge of the hazard, the trial court properly granted summary judgment in favor of the defendants. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991).

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Johnson, Blackburn, Smith and Ruffin, JJ., concur. McMurray, P. J., and Pope, P. J., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent as it is my view that the majority improperly takes the place of a jury in finding (as a matter of law) that defendants M. P. Equities of Atlanta, a New York General Partnership

("M. P. Equities") and Adventist Health System/Sunbelt, Inc. ("Adventist Health") exercised ordinary care in maintaining and inspecting the common areas of their medical complex. I believe a jury would be authorized in finding that the eroded fissure where Armenise fell had been in existence for a substantial period of time, and that "it was large enough to have been observable during routine mowing and maintenance. . . . 'Where an obstruction is in some way hidden, camouflaged or intrinsically unsafe, the question of ordinary care should be one for the jury.' *Forde v. C & S Ga. Corp.*, 178 Ga. App. 400, 403 (343 SE2d 164) (1986). See also *Begin v. Ga. Championship Wrestling*, [172 Ga. App. 293, 294-295 (322 SE2d 737)]." *Lawless v. Sasnett*, 200 Ga. App. 398, 399 (408 SE2d 432).

On the morning of August 15, 1991, Sebastian Sam Armenise dropped Sandra Farley off at a medical office building (adjacent to Smyrna Hospital) for outpatient surgery. He later returned to the medical complex, parked his car in a nearby lot and made his way up a grassy berm to the office building. After finding Farley in her physician's waiting room "still kind of woozy and . . . laying on the couch" and deciding to ease his friend's burden, Armenise headed back to the parking lot so that he could drive his car as close to the medical building as possible. But while returning down the grassy berm to the parking lot, Armenise fell "and heard the worst snap [he] ever heard in his whole life." Sprawled on the ground and suffering with "a terrific burning sensation," Armenise rolled over and tried to pull his foot from a "hole." This effort, however, proved futile so Armenise "grabbed the top of [his] pants and put [his] foot up." He then observed raw leg bones protruding from his skin and fell dazed. Armenise's foot was dangling opposite the appropriate direction.

Learning that the office building is owned by M. P. Equities and that the hospital is owned by Adventist Health, Armenise asserted personal injury claims against both M. P. Equities and Adventist Health (defendants) based on allegations that defendants failed to exercise the requisite degree of care in keeping the grassy berm safe. Defendants denied the material allegations of the complaint and filed motions for summary judgment.

The evidence and pleadings, construed in a light most favorable to Armenise's claims, *Hoffman v. Atlanta Gas Light Co.*, 206 Ga. App. 727, 728 (1) (426 SE2d 387), reveal that the grassy berm is a common area in a medical complex that benefits both defendants; that the berm gradually slopes upward toward a common driveway separating the lot where Armenise parked from the nearby office building, and that Adventist Health is in charge of maintaining this

area.[2] The grassy berm, which extends over 300 feet along the medical complex's common driveway and is adorned with a thick coat of grass and a neat line of dogwood trees, not only appears to be the most convenient route to M. P. Equities' office building, but defendants were aware (before Armenise fell) that it was routinely used by patrons to reach the medical office building. It is alleged that the eroded fissure where Armenise fell was caused by an underground utility line owned by Adventist Health. Photographs of the accident scene, as well as eyewitness testimony, indicate that the fissure was obscured by thick grass at the time Armenise fell.[3]

Although Adventist Health does not own the area where Sam Armenise was injured, Adventist Health owns the lower half of the grassy berm, assumed full responsibility for maintaining the landscape at the medical complex and carried out these duties for its own benefit as well as the benefit of M. P. Equities. Further, the record indicates that Adventist Health is responsible for the buried utility line that allegedly caused the eroded fissure and led to Sam Armenise's fall. Under these circumstances, I believe a jury would be authorized in finding that Adventist Health is (at very least) charged as joint occupier of the grassy berm, along with M. P. Equities. See *Davis v. Garden Svcs.*, 155 Ga. App. 34, 35 (270 SE2d 228). And compare *Ramey v. Pritchett*, 90 Ga. App. 745 (84 SE2d 305), and *Intl. Paper Realty Co. v. Bethune*, 256 Ga. 54, 55 (344 SE2d 228). I therefore believe the circumstances of the case sub judice would authorize a finding that Sam Armenise was an invitee as to both defendants. See *N. L. Indus. v. Madison*, 176 Ga. App. 451, 452 (1) (336 SE2d 574), and *Flint River Cotton Mills v. Colley*, 71 Ga. App. 288, 291 (30 SE2d 426).

" 'Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.' OCGA § 51-3-1. 'An occupier of premises is under a duty to inspect the premises to discover possible dangerous conditions of which he does not know and to take reasonable precautions to protect the invitee from dangers which are foreseeable from

---

[2] The top half of the berm (where Armenise fell) is owned by M. P. Equities, and the lower half of the berm is owned by Adventist Health.

[3] Although Adventist Hospital points out that Sam Armenise was not sure of the precise location of his fall and argues that a more definitive explanation in his affidavit is contradictory, Sandra Farley identified a photograph showing a point on the grassy bank where she observed Armenise lying immediately after the fall. This photograph depicts Farley sinking her foot ankle-deep in a hole which is camouflaged by a thick crop of grass and (according to Farley) is the exact spot where Armenise fell. Farley testified that this photograph was taken about a week after Armenise fell.

the arrangement and use of the premises. Prosser, Law of Torts (4th ed.) 393, § 61. An invitee enters upon the premises under an implied representation, or assurance, that the land has been prepared and made ready and safe for his reception. The invitee is entitled to expect the possessor will exercise reasonable care to make the land safe for his entry. 2 Restatement of Torts 216, § 343.' *Begin v. Ga. Championship Wrestling*, 172 Ga. App. 293, 294[, supra]." *Lawless v. Sasnett*, 200 Ga. App. 398, 399, supra.

In the case sub judice, Wendell R. Rust, Adventist Health's man in charge of maintaining the landscape at the medical development, testified that "I go out weekly and look for broken glass in the parking lot or a sprinkler head [and] I have looked there, but I never noticed that there was a settlement there." Rust admitted, however, that he did not actually cut the grass or maintain the landscape. He explained that over 90 percent of the landscaping work is performed by independent contractors. I believe that this admission, along with photographs indicating that the fissure is long, narrow and dry, would authorize a jury's finding that the hazard "had been in existence for a substantial period of time and that it was large enough to have been observable during routine mowing and maintenance. . . . 'Where an obstruction is in some way hidden, camouflaged or intrinsically unsafe, the question of ordinary care should be one for the jury.' *Forde v. C & S Ga. Corp.*, [supra]. See also *Begin v. Ga. Championship Wrestling*, supra, 172 Ga. App. at 295." *Lawless v. Sasnett*, 200 Ga. App. 398, 399, supra.

I, therefore, believe the trial court erred in granting defendants' motions for summary judgment.

I am authorized to state that Presiding Judge Pope joins in this dissent.

DECIDED DECEMBER 5, 1995 —
RECONSIDERATION DENIED DECEMBER 20, 1995 —

*Barnes, Browning, Tanksley & Casurella, Roy E. Barnes*, for appellant.

*Powell, Goldstein, Frazer & Murphy, Randall L. Hughes, Adrienne E. Marting, Anne L. Thompson, Sharon L. Ware & Associates, Robin P. Lourie*, for appellees.