## A98A1395. PADILLA v. HINESVILLE HOUSING AUTHORITY.
### (509 SE2d 698)

POPE, Presiding Judge.

Appellant Rosemary Padilla brought this action against appellee Hinesville Housing Authority seeking damages for injuries suffered when she fell on a stairway leading from her apartment. The trial court granted the housing authority's motion for summary judgment, and Padilla appeals. We affirm.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards." (Emphasis in original.) *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991). On appeal from a grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the non-moving party. *Maddox v. Southern Engineering Co.,* 231 Ga. App. 802, 803 (500 SE2d 591) (1998); *Lane v. Spragg,* 224 Ga. App. 606 (481 SE2d 592) (1997).

The record, viewed in that light, shows that Padilla became a resident of Regency Apartments, an apartment complex owned by Hinesville Housing Authority, in July 1993. On the morning of December 14, 1995, Padilla left her apartment to take her son to the emergency room for his asthma condition. The stairs leading from Padilla's apartment were constructed of concrete with a metal edging. The sun was coming up at the time Padilla left the apartment and her porch light was on, so she could plainly see the stairs. Upon reaching the second or third step from the bottom of the stairway, Padilla tripped and fell when the tip of her shoe caught in the metal edging which had separated from the concrete portion of the step. Prior to her fall, Padilla testified that she had successfully traversed the stairs in question five to six times per day for over two years

without incident.

At the time of Padilla's accident, the housing authority had received no maintenance requests or other reports from Padilla or anyone else regarding the metal stripping on the stairways leading from Padilla's apartment. In fact, the housing authority had never received any complaints about the metal stripping on any of the stairs in the Regency Apartments complex. And Padilla herself could not recall ever communicating any concern to the housing authority staff regarding the condition of the metal stripping on the stairs in question.

Reina Chiclana, the property manager for the apartment complex, walks the apartment grounds every day as a part of her duties, and she never noticed anything unsafe about the condition of the stairs outside Padilla's apartment. Moreover, in July 1995, approximately five months before Padilla's accident, the United States Department of Housing & Urban Development ("HUD") conducted an inspection of Regency Apartments. HUD made no mention of any problems with the stairs at the time of that inspection. The HUD inspection report indicated that no maintenance was required on the "walks, steps or guardrails" or the "stairs, walkways or community spaces" of the complex. Sometime after Padilla's fall, Chiclana attended a seminar in Florida where she received training in performing property safety inspections. At the seminar, she learned that if a metal edging pulls away from the concrete portion of a step, it can create a safety hazard. After returning from the seminar, Chiclana went back to inspect the apartment steps and stated that she did not see any safety hazards. However, Padilla stated that she had observed maintenance personnel repairing the metal edge of the steps after her fall.

"[I]n order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997). In granting summary judgment to the housing authority, the trial court found as a matter of law that the housing authority lacked actual or constructive knowledge of the condition leading to Padilla's fall.

While there is nothing in the record to indicate that the housing authority had actual notice of a problem with the stairs, Padilla contends that the court erred in granting summary judgment because factual issues remain as to whether the housing authority conducted a reasonable inspection of the premises and thus whether the housing authority had constructive notice of the unsafe condition of the

apartment steps. Specifically, Padilla argues that the fact that Chiclana learned at the seminar she attended after Padilla's fall that metal edging pulling away from concrete steps may become a safety hazard creates a factual issue as to whether the housing authority had failed to reasonably inspect the steps prior to the fall.

Constructive knowledge may be inferred by showing that the property owner failed to exercise reasonable care in inspecting the premises and keeping them safe. A landlord is liable to invitees for injuries caused by a "failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. However, a landlord's liability is not absolute. "Ordinary care in the fulfillment of the landlord's duty to keep the premises in repair does not embrace an affirmative duty to make such an inspection of the premises as will disclose the existence of any and all latent defects which may actually exist therein. This would be but to place upon the landlord an absolute duty to rent premises free from latent defects. It follows that a proper application of the landlord's duty to the keep the premises in repair does not, under any theory, result in making the landlord liable for a latent defect in the premises, simply because it existed at the time of the lease." (Citation and punctuation omitted.) *Lonard v. Cooper & Sugrue Properties*, 214 Ga. App. 862, 864 (449 SE2d 348) (1994). "[A]lthough ordinarily questions of negligence do not lend themselves to summary adjudication, nevertheless the classic rules of negligence still apply in this state. These rules impose liability only where the landlord has actual or constructive superior knowledge. To say otherwise would be to impose absolute liability upon landlords for all defective conditions which could have been repaired before the injury." (Citation and punctuation omitted.) *Harris v. Sloan*, 199 Ga. App. 340, 341 (1) (405 SE2d 68) (1991).

The record in this case shows that no problem was readily discernible in the stairs during either the HUD inspection several months prior to Padilla's fall or Chiclana's regular walks through the property. And Padilla noticed no problems with the stairs even though she went up and down them several times a day. No one had ever complained to the housing authority about any problem with the metal edging of the stairs. Thus, the housing authority met its initial obligation of showing that there is an absence of evidence to support Padilla's claim that a reasonable inspection would have discovered this defect in the stairs and thus no evidence of constructive knowledge.

To survive summary judgment, Padilla was obligated to "point to specific evidence giving rise to a triable issue." *Lau's Corp. v. Haskins*, 261 Ga. at 491. Padilla relies upon Chiclana's later attendance at the seminar to raise an inference that the housing authority's prior inspections of the property were somehow lacking. While the

seminar attendance indicates that Chiclana received training on the inspection of stairs and notification that a safety hazard may exist if the metal edging pulls away from stairs like those in the apartment complex, it does not in and of itself create a factual issue as to whether the housing authority was negligent in inspecting the property. Nothing in the record indicates that any inspection would have discovered a problem with the metal edging on the stairs, and there can be no inference that the housing authority was negligent simply because the problem was not detected. Certainly, the HUD inspection detected no problem with the steps several months before Padilla's accident. Thus, there is no evidence of constructive knowledge on the part of the housing authority. Because no genuine issue of material fact exists as to the first element of Padilla's claim, the trial court correctly granted summary judgment to the housing authority. See *Lonard v. Cooper & Sugrue Properties*, 214 Ga. App. at 865; *Harris v. Sloan*, 199 Ga. App. at 342.

*Judgment affirmed. Beasley and Ruffin, JJ., concur.*

DECIDED NOVEMBER 20, 1998.

*Montlick & Associates, Alan Y. Saltzman, Killian & Boyd, Robert P. Killian*, for appellant.

*Oliver, Maner & Gray, Patrick T. O'Connor, David S. Gruskin*, for appellee.