A02A0559. JAMES v. VINEVILLE CHRISTIAN TOWERS, INC.
(567 SE2d 712)

RUFFIN, Judge.

Sara L. James was injured when she fell on property owned by Vineville Christian Towers, Inc. ("Vineville"). James sued Vineville, alleging that the defendant's negligence caused her injuries. The trial court granted summary judgment to Vineville, and James appealed. For reasons that follow, we affirm.

To prevail on its motion for summary judgment, Vineville must show

> that there is no evidence sufficient to create a jury issue on at least one essential element of [James'] case. If there is no evidence sufficient to create a genuine issue as to any essential element of [James'] claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.[1]

On appeal from a trial court's grant of summary judgment, we conduct a de novo review of the record and construe the evidence and all reasonable inferences in favor of the nonmoving party.[2]

---

[1] *Hansen v. Cooper*, 253 Ga. App. 533, 535 (559 SE2d 740) (2002).
[2] See id. at 533.

Viewed in this light, the evidence shows that Vineville owned and operated an apartment complex for elderly persons. On October 11, 1999, the date of her fall, James was 80 years old and lived at the complex. For the two years preceding her fall, James took a one-mile walk in the morning and in the afternoon. According to James, "[e]very day [she went] the same way . . . going and coming back." She would exit the apartment building, walk up the street, turn around, and walk back to the complex.

On the day of her accident, James was returning from her afternoon walk. As she was walking across a grassy area on the apartment complex grounds, she stepped into a hole and fell. The hole was approximately seven to eight inches wide, over one foot long, and came up to James' knee. According to James, the hole was invisible even after she fell; all she saw "was just the grass there[,] . . . you couldn't see anything. If the hole were there, you couldn't see it." James further stated that, although she had walked over the same grassy area every day for two years, and had traversed it that morning, she did not see the hole and had never previously noticed any soft spots or holes. In fact, James said, "[e]verybody walked across it." James did not know how long the hole had existed or how it got there. She stated, however, that the grounds were well maintained, and the grass had "been cut a few days or a week before" her fall.

In contrast to James' testimony that the hole was virtually invisible, her son, who had observed the hole the following day, *after it was filled with gravel,* stated that "[a]nyone mowing the grass . . . would have noticed the hole. Any person conducting a reasonable inspection of the area would have noticed the hole." James' son acknowledged, however, that he could not say whether the hole was visible on the day his mother fell.

In support of its contention that it had no knowledge of the hole, Vineville presented the affidavit of its director, Faye Fannin. Fannin stated that Vineville routinely inspected the premises, and either a safety/maintenance supervisor or a security guard walked the grounds several times each day. Vineville also contracted with a landscape service that "inspected and maintained the grounds twice per month." According to Fannin, the grounds were inspected on October 11 before James' accident, Vineville had not received any prior complaints about holes or depressions in the grassy area, and the landlord had no knowledge of any such hazards.

As landlord, Vineville is required to maintain its common areas in a reasonably safe condition, and it is liable for damages arising from a breach of this duty.[3] To recover damages for injuries resulting

---

[3] See *McCullough v. Briarcliff Summit, L.P. II,* 237 Ga. App. 630, 631 (1) (516 SE2d 353) (1999) (physical precedent only); *Padilla v. Hinesville Housing Auth.,* 235 Ga. App. 409, 411 (509 SE2d 698) (1998).

from her fall on Vineville's property, James "must prove (1) that [Vineville] had actual or constructive knowledge of the hazard; and (2) that [she] lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of [Vineville]."[4] Because it is undisputed that Vineville did not have actual knowledge of the hole, we focus our inquiry on whether there is any evidence that it had constructive knowledge.

James could show that Vineville had constructive knowledge in two ways.[5] First, she could prove that one of Vineville's employees "was in the immediate area of the hazard and had the means and opportunity to easily see and remove the hazard."[6] James does not contend that Vineville had such constructive knowledge, but instead relies on the second method which is premised on Vineville's "duty to inspect the premises to discover possible dangerous conditions . . . and to take reasonable precautions to protect [her] from [foreseeable] dangers."[7] Under this method, the evidence must show "that the hazardous condition existed on the premises for a sufficient period of time such that [Vineville,] exercising ordinary care to inspect the premises[,] should have discovered and removed the hazard."[8] According to James, "the record is devoid of evidence of any inspection procedures[,] and . . . there is no evidence that any particular inspection procedure was actually carried out." We disagree.

The evidence shows that Vineville conducted reasonable inspections of the property. Fannin's affidavit reveals that the grounds were inspected several times each day by either a maintenance supervisor or security personnel. In addition, the landscape service maintained and inspected the grounds semimonthly. James' own testimony establishes that the landscape service had recently conducted such maintenance and that the grounds were well kept. And Fannin stated that she had personal knowledge that the grounds had been inspected on October 11, 1999, before James fell.

Despite these inspections, the hole remained undiscovered, and there is no evidence that Vineville should have discovered the hazard. By all accounts the hole was invisible. It was obscured by the grass, even after the grass had been freshly cut. While James' son believed the hole was clearly visible, he reached this conclusion only *after* the hole was filled with gravel and he knew where to look. As

---

[4] (Punctuation omitted.) *Padilla*, supra at 410.
[5] See *Armenise v. Adventist Health System/Sunbelt*, 219 Ga. App. 591, 592 (466 SE2d 58) (1995).
[6] Id.
[7] (Punctuation omitted.) Id. at 593.
[8] Id.

the son acknowledged in his deposition, he did not know whether the hole was visible prior to his mother's fall, and his conclusion, therefore, is not probative of the issue. Considering Vineville's inspections and that all the residents, including James, regularly traversed the area, we are mystified that the hole was not found earlier. Nevertheless, the fact remains that Vineville conducted reasonable inspections and "[t]here was no evidence that the grassy area presented any kind of hazard requiring a closer inspection since no one else had tripped or fallen in the area."[9]

Although Vineville had a duty to reasonably inspect its common areas, it does not follow that the defendant was required to conduct an inspection that disclosed every latent defect on the property.[10] If this were the rule, then proprietors would be absolutely liable for all defective conditions on their property.[11] The law does not impose such absolute liability, and because there is no evidence that Vineville had constructive knowledge of the hole, the trial court properly granted summary judgment.[12]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JUNE 21, 2002.

*Lane & Jarriel, Thomas F. Jarriel*, for appellant.
*Martin, Snow, Grant & Napier, Lisa M. Edwards, Richard A. Epps, Jr.*, for appellee.

---

[9] Id. at 594.
[10] See *Padilla*, supra at 411.
[11] See id.
[12] See id. at 411-412 (summary judgment proper where hazard created by metal edging pulling away from stairs was not discovered by reasonable inspections and plaintiff had previously traversed the stairs several times per day without noticing the problem); *Armenise*, supra (same; hazard created by grass-covered depression was not discovered by reasonable inspection and other invitees had frequently walked over the area without problems); *Lonard v. Cooper & Sugrue Properties*, 214 Ga. App. 862, 864-865 (449 SE2d 348) (1994) (same; no evidence that leaf-covered hole was discoverable through reasonable inspection). Compare *Lawless v. Sasnett*, 200 Ga. App. 398, 399 (408 SE2d 432) (1991) (summary judgment improper where knee-deep hole was obscured by grass 12 inches high creating a jury issue as to whether owner liable due to size of hole and infrequent maintenance).