A07A2290. THOMAS v. DEASON.
(658 SE2d 165)

MIKELL, Judge.

Melinda Thomas appeals from the trial court's grant of summary judgment to defendant Michael Deason on her premises liability claim against Deason, the owner of the property where Thomas fell and sustained the injuries for which she sought recovery. Because the trial court correctly found that Deason was without actual or constructive knowledge of the alleged hazard on his property, we affirm.

In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact remains and that he is entitled to judgment as a matter of law.[1] "A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case."[2] "We review the evidence and record de novo, construing all reasonable conclusions and inferences in favor of the nonmovant."[3]

Viewed most favorably to Thomas, the nonmoving party, the evidence shows that on November 6, 2004, Thomas's cousin, Tabitha Deason (known to Thomas as "Tammy"), called and invited Thomas over to help hang Christmas decorations. Thomas accepted the invitation and around 7:00 p.m. that evening, Tammy picked Thomas up. On their way back to the Deason home, Tammy stopped at a liquor store and, at Thomas's request, purchased a bottle of vodka and some mixer for Thomas. After arriving at the Deason home, Thomas ate dinner and then fixed herself a drink of vodka and Mountain Dew, which she started to drink while sitting on the back patio with Tammy, who had a glass of wine. The Deasons' two dogs were leashed on the back patio, and Tammy asked Thomas to walk one of the dogs.

---

[1] OCGA § 9-11-56 (c). See *Massey v. Seay*, 257 Ga. App. 131 (570 SE2d 346) (2002).
[2] (Footnote omitted.) *Wallace v. Wal-Mart Stores*, 272 Ga. App. 343 (612 SE2d 528) (2005).
[3] (Footnote omitted.) *Howard v. Gram Corp.*, 268 Ga. App. 466, 467 (602 SE2d 241) (2004).

Thomas stood up and walked the dog around the house to the left of the back patio, then all the way around the house to the front, and then around the front of the house and back up the other side toward the back yard. As Thomas walked the dog up the right side of the house, she fell when her right foot went into a hole in the flat, grassy area to the side of the house. According to Thomas's testimony, the hole was about one foot in diameter and had an "odd shape"; it looked as if an animal had dug it. Thomas was unable to say how deep the hole was and there is no other evidence in the record as to the depth of the hole. Thomas stated that she "never saw the hole" before her foot went into it because it was obscured by grass around it: "[T]here was grass there. I mean you couldn't tell it was a hole. . . . I mean there was some light, but you couldn't see the hole itself until you hit it. There was grass around it." She further testified that, although she could see the hole when she was on the ground after she fell, she could not see the hole when she stood back up, "[b]ecause of the grass. There was grass right there."

In their affidavits, both Deason and his wife Tammy denied any knowledge of the hole where Thomas fell. They further averred that "[t]wo to three times per day" one of them would take the dog out to the back yard, and "[w]hile we wait for the dog, we will inspect the yard for any irregularities and maintenance that may need to be completed, and we will correct or maintain same at that time. In addition, we maintain the yard on a regular basis, and inspect it for compliance with neighborhood covenants." Tammy also averred that "on November 11, 2004" — apparently meant as the date of Thomas's fall — she "inspected the back yard of [her home] while taking out the dog"; that this inspection occurred "approximately one to two hours before the actual incident occurred"; and that at that time she "did not see any hole in the yard, nor the alleged hole in which [Thomas] allegedly fell."

The trial court granted summary judgment for defendant Deason, ruling that, viewing Thomas as an "invitee" for purposes of summary judgment, Thomas had failed to show that Deason had actual or constructive knowledge of the alleged hazard in his yard. Thomas contends that the trial court erred in so ruling, asserting that issues of fact remained for jury resolution. We disagree and, accordingly, we affirm the ruling of the trial court.

We assume without deciding that Thomas was an "invitee," to whom the owner would be liable "for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."[4] Although the owner of the premises must exercise ordinary care, the

---

[4] OCGA § 51-3-1.

owner is not an insurer of an invitee's safety,[5] nor does the mere fact that an accident occurred create a presumption of negligence.[6] In order to recover for injuries sustained in a slip-and-fall action, the invitee must show that the owner had superior knowledge of the hazard which caused the injury,[7] that is, the invitee must first prove "that the defendant had actual or constructive knowledge of the hazard."[8] This Thomas has failed to do.

In their affidavits, the Deasons denied any knowledge of the hole in which Thomas fell. Although Thomas contends that their denial refers only to the *back* yard, whereas she was injured when she stepped in a hole in the *side* yard, the Deasons' affidavits clearly state that neither Deason nor his wife Tammy saw any hole in "the yard." Because the Deasons denied that they had actual knowledge of the existence of the hole, and because Thomas was unable to controvert their testimony on this point, it follows that in order to recover Thomas must prove that Deason had constructive knowledge of the hazard. Constructive knowledge can be shown by evidence that Deason's failure to discover the hazard resulted from a failure to exercise reasonable care in inspecting the premises.[9] But the Deasons averred that they regularly inspected "the yard" (not merely the "back yard") two to three times per day.

The facts in the case at bar are analogous to those presented in *Armenise v. Adventist Health System*.[10] There, plaintiff fell "when he stepped in an ankle-deep depression in the ground which was hidden from view by thick grass."[11] In that case, the landscape supervisor was "able to locate [the hole] only by stepping around and pressing down with his feet in the area where [the plaintiff] fell until his foot actually pushed down the grass covering the depression."[12] Under those circumstances, and where no one else had tripped or fallen in the area, weekly inspections by defendants' landscape supervisor were held to be reasonable.[13] Defendants' failure to discover the hazard in that case was held not to be negligence, because "the hazard . . . was not discoverable by the defendants, despite the

---

[5] *Dew v. Motel Properties*, 282 Ga. App. 368, 370 (1) (638 SE2d 753) (2006).

[6] Id. at 371 (1).

[7] *Armenise v. Adventist Health System/Sunbelt*, 219 Ga. App. 591, 592 (466 SE2d 58) (1995).

[8] (Citation omitted.) *Ballew v. Summerfield Hotel Corp.*, 255 Ga. App. 494, 495 (2) (565 SE2d 844) (2002). Accord *James v. Vineville Christian Towers*, 256 Ga. App. 72, 74 (567 SE2d 712) (2002).

[9] See *Lawless v. Sasnett*, 200 Ga. App. 398, 399 (408 SE2d 432) (1991).

[10] Supra.

[11] Id. at 591.

[12] Id. at 593-594.

[13] Id.

exercise of ordinary care in inspecting the premises[; thus,] there [was] no basis for concluding that the defendants had constructive knowledge of the hazard."[14] Similarly, the hazard in the Deasons' yard was difficult to see. Thomas testified that she could not see it when she was standing up — either before or after she fell. Thus, Thomas has not shown that by ordinary care in inspecting the premises, Deason could have discovered and remedied the hazard alleged to exist in his yard; therefore, Deason has not been shown to have constructive knowledge of the hazard.[15] As this Court has previously noted, although an owner owes its invitees a duty of reasonable inspection,

> it does not follow that the defendant was required to conduct an inspection that disclosed every latent defect on the property. If this were the rule, then proprietors would be absolutely liable for all defective conditions on their property. The law does not impose such absolute liability.[16]

Because Thomas has not shown that Deason had either actual or constructive knowledge of alleged hazard, the trial court did not err in granting his motion for summary judgment.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*


DECIDED FEBRUARY 8, 2008 —
RECONSIDERATION DENIED FEBRUARY 26, 2008

*Thomas M. Strickland*, for appellant.
*Gray, Rust, St. Amand, Moffett & Brieske, Matthew G. Moffett*, for appellee.


---

[14] Id. at 594 (summary judgment for defendants affirmed).

[15] See *Chastain v. CF Ga. North DeKalb, L.P.*, 256 Ga. App. 802, 804 (569 SE2d 914) (2002) (defendant lacked constructive knowledge of water hazard which could not be detected from ordinary standing position). Compare *Lawless*, supra at 398, 399 (whether defendant had constructive knowledge of knee-deep hole hidden by foot-high grass was question for jury).

[16] (Footnotes omitted.) *James*, supra at 75 (defendant did not have constructive knowledge of knee-deep hole which was "invisible" because obscured by grass) (id. at 74). Accord *Padilla v. Hinesville Housing Auth.*, 235 Ga. App. 409, 412 (509 SE2d 698) (1998) (no constructive knowledge shown where plaintiff cannot show that reasonable inspection would have detected alleged defect in metal edging of concrete stairs).