## A09A2137. WITT et al. v. BEN CARTER PROPERTIES, LLC et al.
### (692 SE2d 749)

BARNES, Judge.

Kay and Marvin Witt appeal the trial court's grant of summary judgment to the defendants in this premises liability case based upon a hidden defect. The Witts contend that a trier of fact could conclude that the defendants had constructive knowledge of the defect. Because the undisputed evidence in the record shows otherwise, we affirm.

We review de novo a trial court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party. *Orff v. Stonewood Restaurant Group*, 285 Ga. App. 488 (646 SE2d 702) (2007). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.

Viewed in the light most favorable to the Witts, the record shows that on a September afternoon in 2004, Kay and Marvin Witt drove to Cheddar's Restaurant in the Columbus Park Crossing shopping center. Because the parking lot in front of the restaurant was full, the Witts parked in an adjoining lot in front of a Circuit City store.

That lot was bordered by a rectangular grassy median that separated the Circuit City lot from the Cheddar's lot. To reach the restaurant, the Witts walked across the median, which appeared to be a smooth expanse of mowed grass. As she was walking, Kay Witt stepped into a hole in the median and fell, breaking her ankle. Although she was watching where she was walking, she saw no hole, depression, or other irregularity in the ground before she fell.

Six days after his wife fell, Marvin Witt returned to the median to search for the hole. Upon arrival, Marvin Witt saw no sign of any hole, depression, or other irregularity in the ground. By getting down on his hands and knees and probing the general area where his wife had fallen, however, Marvin Witt discovered two holes in the ground. Using a yardstick, he determined that one hole was five inches deep and the other was six inches deep. He did not measure the diameter of the holes. The holes were obscured by grass, which was evenly cut approximately one inch tall. Marvin Witt agreed that there was ''no way, in the absence of feeling around with your hand down there, to note or observe any kind of depression or hole'' in the ground.

The common areas of the shopping center, including the median where Kay Witt fell and eleven similar medians on the premises, were maintained by Ben Carter Properties, LLC. Before Kay Witt's fall, the property company knew of no one else falling or otherwise being injured on any of the grassy medians in the shopping center. The company likewise was unaware of any hole, depression, or other irregularity in the median where Kay Witt fell.

James Stone, who worked part-time for Ben Carter Properties as the shopping center's maintenance coordinator, visually inspected the property on a regular basis. Stone usually inspected the medians by driving his truck slowly around them, examining the condition of the grass. He occasionally conducted inspections on foot, although all of his inspections in the time frame shortly before Kay Witt's fall were conducted from his truck. Stone did not see any holes or other irregularities in the median in question before Kay Witt fell. After the fall, Stone spoke with Marvin Witt to ascertain the general area where the fall had occurred. He then walked over that area, but was unable to find any irregularity. He later made a second search and discovered the two holes by pressing down in the grass with his foot. Stone could not tell what caused the holes or how long they had been there.

Ben Carter Properties contracted with Best Landscaping Company to maintain the medians and other landscaped areas in the shopping center. Under the supervision of Scott Rodriguez, a crew from Best Landscaping mowed the grass in the medians on a weekly basis during the growing season, including September 2004. The grass was last mowed four or five days before Kay Witt's fall.

Rodriguez testified that part of the crew's maintenance responsibility included looking for depressions or irregularities in the medians, which they would fill with sand kept on the premises for that purpose. No problem with the median in question had been reported to Rodriguez before this fall.

After Kay Witt fell, Best Landscaping workers filled in the holes that Marvin Witt had found. Rodriguez testified that the holes could have been caused by vehicle tires, settling of the ground, or a "washout" caused by a leak in the irrigation system. He further testified that "[t]here's really no way of saying what caused" the holes and he could not tell how long they had been there.[1]

Jake Watson, the manager of Cheddar's Restaurant, testified that the grass in the median was well maintained and kept at an even height. He further testified that most of the restaurant's employees parked in the same lot where the Witts had parked and walked across the same median on their way to work. Those employees had been trained to look for and report any safety issues to restaurant management, yet no employee had ever reported any defect in the median.

Kay and Marvin Witt sued Ben Carter Properties and Columbus Park Crossing (Delaware), LLC, the property owner, alleging that the defendants had negligently maintained the premises and failed to warn her of the hazard in the median. The defendants moved for summary judgment, arguing that they lacked superior knowledge of the hazard. Following a hearing, the transcript of which has not been included in the record, the trial court entered a written order granting the motion for summary judgment without explanation.

"An owner or occupier of land is liable in damages to invitees who come upon the land for injuries occasioned by his failure to exercise ordinary care in keeping the premises safe." (Citation and punctuation omitted.) *Hansen v. Cooper*, 253 Ga. App. 533, 535 (559 SE2d 740) (2002); see also OCGA § 51-3-1. However, proof that an invitee tripped or fell, without more, does not establish liability on the part of the property owner or occupier. Id. Rather, the basis for imposing liability is the owner or occupier's superior knowledge of the hazard. *Ballew v. Summerfield Hotel Corp.*, 255 Ga. App. 494, 495 (2) (565 SE2d 844) (2002). Thus, to recover, a plaintiff must show that the defendant had actual or constructive knowledge of the hazard. *Thomas v. Deason*, 289 Ga. App. 753, 755 (658 SE2d 165) (2008).

---

[1] Rodriguez referred to the holes as "slight depressions" that required only one shovelful of sand to fill. For the purpose of the summary judgment motion, however, we accept as true Marvin Witt's testimony that the holes were five and six inches deep, respectively.

It is undisputed that the defendants in this case lacked actual knowledge of the holes in the grassy median where Kay Witt fell. Thus, to avoid summary judgment, the Witts had to point to evidence that the defendants had constructive knowledge of the holes. Constructive knowledge can be shown by evidence that a proprietor's failure to discover the hazard resulted from its failure to exercise reasonable care in inspecting the premises.[2] *Thomas*, supra at 755. Under this method, the evidence must show "that the hazardous condition existed on the premises for a sufficient period of time such that [the defendants] should have discovered and removed the hazard." (Citation omitted.) *Armenise v. Adventist Health System/ Sunbelt*, 219 Ga. App. 591, 593 (466 SE2d 58) (1995). Regarding the scope of the defendants' inspections, "the law requires only the exercise of ordinary care, not extraordinary care." *Hansen*, supra at 536.

We have repeatedly affirmed summary judgment in favor of landowners and occupiers where invitees stepped into small concealed holes in well-maintained, regularly inspected grassy areas. See *Thomas*, supra; *James v. Vineville Christian Towers*, 256 Ga. App. 72 (567 SE2d 712) (2002); *Armenise*, supra. The facts of *Armenise*, supra, are nearly identical to those in this case. There, an invitee walking across a grassy area between a parking lot and a medical building stepped into an ankle-deep depression in the ground and broke his ankle. The evidence showed that the depression was concealed by thick grass that was mowed and inspected on a weekly basis. The defendant's landscape supervisor had failed to discover the depression during his inspections, but found it after the invitee's fall by pressing down in the area with his feet. Id. at 592-593. We affirmed the trial court's grant of summary judgment to the proprietor, holding that the proprietor lacked constructive knowledge because its weekly inspections were reasonable as a matter of law:

> The defendants exercised ordinary care by conducting inspections of the premises which were reasonable under the circumstances. There was no evidence that the grassy area presented any kind of hazard requiring a closer inspection since no one else had tripped or fallen in the area. Despite conducting a reasonable inspection of the premises, the

---

[2] Constructive knowledge can also be shown by evidence that one of defendants' employees was in the immediate area of the hazard and had the means and opportunity to easily see and remove it. See *James v. Vineville Christian Towers*, 256 Ga. App. 72, 74 (567 SE2d 712) (2002). The Witts do not allege that the defendants acquired constructive knowledge in this manner.

> defendants simply failed to discover the hidden hazard. This
> is not negligence.

Id. at 594.

*James*, supra, also presents a similar fact pattern. In that case, an apartment resident stepped into a hole and broke her ankle while walking across a grassy area on the grounds of the apartment complex. She testified that the hole was invisible; all she saw "was just the grass there." 256 Ga. App. at 73. The maintenance supervisor and security guard who regularly patrolled the premises had never seen the hole, and the complex had received no complaints about it. Under these circumstances, there was "no evidence that [the proprietor] should have discovered the hazard." Id. at 74.

*Thomas*, supra, is likewise analogous. There, a social guest was injured after stepping into a hole while walking the landowners' dog in the back yard. The guest testified that she "never saw the hole" before falling because "[t]here was grass there" and "you couldn't tell it was a hole." 289 Ga. App. at 754. The landowners testified that they walked the dog around the property daily and inspected the yard for irregularities, but never saw the hole in which their guest fell. Under these circumstances, we affirmed summary judgment for the landowners because the guest failed to present evidence of their constructive knowledge of the defect.

As in *Thomas*, supra, *James*, supra, and *Armenise*, supra, the holes in this case were concealed by grass and were not apparent through visual inspection. Marvin Witt knew generally where his wife had fallen, yet he found the holes only by getting down on his knees and poking the ground with his hands. Stone could not find the holes on his first attempt and discovered them on his second attempt only after pressing on the ground with his foot. The grass was cut on a weekly basis to an even height of approximately one inch, and it had been cut four or five days before Kay Witt fell. Stone, as well as employees of the landscaping maintenance service, inspected the medians regularly. There were no reports of any holes or other irregularities in the median, or of any prior falls or injuries, that might have triggered the need for a heightened inspection.

The Witts rely on our decision in *Lawless v. Sasnett*, 200 Ga. App. 398 (408 SE2d 432) (1991), but that case is distinguishable. There, a customer at a pick-your-own fruit orchard fell in a knee-deep hole that was hidden by grass that had grown a foot high. The proprietor mowed the grass on an "as needed" basis, but could not remember the last time he had mowed it before the incident in question. Id. Once every three to four weeks, the proprietor's employees sprayed herbicide on areas that the mower could not reach, and they looked for holes while spraying. There was no

evidence, however, about when the last spraying had occurred. Given the size of the hole and the infrequent maintenance of the area, we held that whether the proprietor could be charged with constructive knowledge of the hole was a jury question. Id. at 399. In this case, by contrast, the holes were much smaller and the grass was much shorter and had been recently mowed. *Lawless*, therefore, is not controlling here.[3]

Additionally, even though no witness was able to explain the origin of the holes or to determine how old they were, the Witts argue that the jury could infer that the holes had been there for a long time, such that the defendants should have discovered them in the exercise of ordinary care. Based on Marvin Witt's estimate that the holes were approximately the same distance from each other as a vehicle's tires, the Witts contend that they must have been made by a vehicle driving onto the median, as opposed to ground settling or a "wash out" — the other possible explanations offered by Rodriguez. If tires made the holes, the Witts theorize, the grass would also have been disturbed and the holes would have remained visible during the long period while the grass was growing back. This, however, is pure speculation unsupported by any evidence in the record and is insufficient to withstand a motion for summary judgment. See, e.g., *Kennestone Hosp. v. Harris*, 285 Ga. App. 393, 395 (1) (a) (646 SE2d 490) (2007).

In sum, given the undisputed evidence that the holes were rendered invisible by well-maintained, recently mowed grass that the defendants inspected regularly, the Witts have failed to produce any evidence that the defendants had constructive knowledge of their existence. Thus, the trial court did not err in granting summary judgment to the defendants.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 24, 2010 —

*Bennett & Casto, Paul R. Bennett*, for appellants.
*Chambless, Higdon, Richardson, Katz & Griggs, Mary M. Katz, Richard A. Marchetti*, for appellees.

---

[3] We distinguished *Lawless*, supra, in this same manner in our opinions in *Thomas*, supra, *James*, supra, and *Armenise*, supra.