A11A0958. WATTS & COLWELL BUILDERS, INC.
v. MARTIN et al.
(720 SE2d 329)

SMITH, Presiding Judge.

In this interlocutory appeal, Watts & Colwell Builders, Inc. ("Watts") appeals from the trial court's denial of its motion for summary judgment in a personal injury case brought by Carol Martin and her husband Barry Brown (collectively "Martin"). For the reasons set forth below, we reverse.

Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party." (Citation and footnote omitted.) *Pirkle v. Robson Crossing*, 272 Ga. App. 259 (612 SE2d 83) (2005).

So viewed, the record shows that this lawsuit arises from injuries Martin received when the door to a handicap bathroom stall fell off of its hinges and knocked her onto the ground. Martin deposed that "[w]hen I came out of the facilities, the door came and slapped me on the back and hit me and knocked me to the ground. And I was laying [sic] on the floor and couldn't get up underneath the door. And I had to try to push it off of me." According to Martin, the door came completely off both hinges when it fell.

This was a restroom with two stalls that Martin customarily used at work. She did not notice any problem with the door when she went into the restroom that day or any other day; it "open[ed] smoothly" before her injury. She did not notice anything unusual

about the way the door opened when she went into the bathroom stall on the day of her injury, and she was not aware of any other bathroom doors falling in the building before her injury.

After she was injured, Martin looked at the door with the building manager, Jean Rowland, and saw that the top hinge "was all crooked and bent, like it broke." She testified that Rowland "said that she knew that there had been a problem with the door" and that "somebody was going to get hurt on that door." According to Martin, Rowland "took an accident report" of the incident, and a secretary named Charlotte Jeffers "said they need to keep those bathrooms up." Martin testified that she was not aware of these complaints or problems before her injury. In an affidavit filed in opposition to Watts's summary judgment motion, Martin averred:

> In my deposition . . . I said the bathroom door looked "normal" when I entered. My meaning of this statement was that nothing appeared to me out of the ordinary, one way or the other. I had used this restroom several times before this incident, and it looked the same as it had on prior occasions, as much as I noticed. . . . However, I did not look at the condition of the stall door hinges before the incident, and I could not state whether they were defective or not. I did not do anything unusual to the door, just opened and closed it normally when it fell and hit me.

Rowland testified in her deposition that she worked as the executive secretary for the director of the Laurens County Department of Family and Children Services ("DFACS"), the principal tenant of the building owned by Watts and constructed by Watts in 1990. The lease between Watts and Martin's employer, the Georgia Department of Labor, stated:

> Landlord, shall, at his sole cost, service, replace, keep and maintain in good order and repair each and every part and portion of the existing demised Premises together with any improvements or additions the Landlord might install in or place upon the demised Premises in the course of the term of this Rental Agreement.

Because Laurens County DFACS was the main tenant in the building, one of Rowland's job responsibilities was to be a "point of contact" to report "issues" to the owner of the building. She was also responsible for completing a report every year about the number of people in the building "and any kind of issues or anything." These reports could include "information regarding the structure itself."

None of these reports ever included "any issues with the restrooms." The established procedure was for her to report any problems to Watts' building maintenance supervisor, Glenn Callaway. According to Rowland, Watts was responsible for maintaining and repairing the bathrooms in the building; a different company performed janitorial maintenance.

Rowland testified that the only reported problem with a bathroom door in the building before Martin's injury was a complaint that the outer entry door to the same bathroom where Martin was injured was not closing completely. Rowland denied any knowledge of another bathroom stall door in the building falling off of its hinges before or after Martin's injury. She denied telling "Martin or anyone within earshot of her that [she] knew this was going to be a problem or that something like this was bound to happen." She also denied hearing anyone else say anything that could be construed to admit previous knowledge of a problem with the bathroom stall door.

Rowland completed an incident report after Martin's injury that she provided to Watts. According to Rowland, Callaway checked every other bathroom door in the building after Martin's injury and told her that all of the hinges "were fine."

Callaway testified that it was his job to personally repair reported problems or "if it's something I can't do, hire it out." He testified that he would do a walk-through inspection of a Watts-owned building if he was called out for a repair or if he happened to be in the area of the building. He did not have a schedule for regular inspections, but no more than "a couple of weeks" passed between walk-through inspections. He would do a walk-through inspection of restrooms approximately every six months. He could not provide a date for the last time he inspected the bathroom where Martin was injured, but knew that he had not been in that restroom the month of her injury. Before Martin's injury, he was not aware of "any problems whatsoever with the doors to the stalls in these rest-rooms."

Once a year, he would inspect an entire building, including door hinges. If he found loose hinges on doors during these inspections, he would tighten them. He did not inspect the hinges on bathroom stall doors before Martin's injury. After her injury, he inspected all of the bathroom stall door hinges and found no broken hinges or any in need of tightening. He explained that the stall door hinges did not need tightening because they were different from the hinges used on regular doors.

Callaway came to the building the day after he learned that Martin had been injured. When he inspected the door and hinge, he saw that the top hinge was broken. The hinge was not rusty and it looked like "a clean break." He explained that "the hinge is L-shaped,

and it broke right in the L where the piece comes out. It was just sheared off." Half of the hinge was on the door, and the other half was attached to a board on the wall. He testified that the door weighed around 30 pounds, was wider than a regular stall door because it was for the handicapped stall, and had two hinges, one at the top and one on the bottom. In his opinion, the door broke because "somebody big had to be swinging it." Callaway repaired the door by putting a new top hinge on it.

Photographs taken of the bathroom door after it had been repaired following Martin's injury show that the original remaining lower hinge was "rusted and discolored" and that some of the other door hinges in the bathroom had "rust and discoloration." Martin submitted no expert testimony about the condition of the remaining bathroom stall door hinges or whether the hinges used on the handicap size door were adequately sized for the added weight of the larger door.

Callaway testified that he placed the old hinge in the console of his truck after he removed it. Although no one asked him to keep it, he thought he should because an accident had occurred. When he looked for it after Watts was served with Martin's complaint, he could not find it.

Martin filed suit against Watts for her injuries and asserted that Watts was liable in negligence based upon its actual or constructive knowledge of the hazard. Watts moved for summary judgment on the ground that it was an out-of-possession landlord with no notice of a necessary repair and no duty to inspect. Martin opposed the motion by arguing that res ipsa loquitur applies, ordinary premises liability principles apply, issues of fact are created by Watts's spoliation of evidence (losing the hinge), that Watts had notice of the defect due to loose hinges on the bathroom entrance door, and negligent construction. On the same day she filed her brief in opposition to Watts's summary judgment motion, Martin amended her complaint to assert theories of recovery based upon negligent construction and maintenance by a landlord.

The trial court conducted a hearing on the summary judgment motion seven days after Martin amended her complaint to assert a claim for negligent construction. A transcript of this hearing is not in the record before us. After the hearing, the trial court issued a written order stating:

> The above-captioned case came before the Court on August 25, 2010, regarding the Motion for Summary Judgment filed by Watts & Colwell Builders, Inc. (the "Defendant"). Both parties were represented by counsel. After careful consideration of the evidence and argument submitted, the Court

finds that there are genuine issues of material fact to be determined by a fact finder. Therefore, the Motion for Summary Judgment is denied.

We subsequently granted Watts's application for an interlocutory appeal.

On appeal, Watts asserts that under OCGA § 44-7-14 (landlord's duty to maintain a leased premises in repair), it was entitled to summary judgment in its favor. Martin responds that genuine issues of fact remain based upon the spoliation of evidence by Watts, the application of the doctrine of res ipsa loquitur, whether OCGA § 44-7-14 or OCGA § 51-1-3 applies to determine Watts's liability, whether Watts had a reasonable inspection procedure in place, and whether the bathroom stall doors were defectively constructed or negligently maintained.

1. We find no merit in Martin's claim that Watts's alleged spoliation of evidence supports the trial court's denial of Watts's motion for summary judgment. "Georgia law allows a finding of spoliation if the loss of the evidence occurs at a time when there is 'contemplated or pending litigation.' " (Citation and punctuation omitted.) *Kitchens v. Brusman*, 303 Ga. App. 703, 707 (1) (a) (694 SE2d 667) (2010). "[C]ontemplation of potential *liability* is not notice of potential litigation." (Citation and punctuation omitted.) Id. In this case, the record shows only the mere contemplation of potential liability at the time the hinge was lost. The completion of the accident report, the failed attempt to retain the hinge based upon the happening of an accident alone, and the inability to locate the hinge immediately after the lawsuit was filed do not demonstrate contemplated or pending litigation at the time of the loss. See *Paggett v. Kroger Co.*, 311 Ga. App. 690, 692 (2) (716 SE2d 792) (2011) (plaintiff not entitled to spoliation presumption even though incident report prepared immediately after his injury); *Craig v. Bailey Bros. Realty*, 304 Ga. App. 794, 796-797 (1) (697 SE2d 888) (2010) (simple fact someone injured in accident, without more, not enough to trigger rules of spoliation).

2. Likewise, the doctrine of res ipsa loquitur has no application in this case.

> The elements of the doctrine are: (1) injury of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

(Citation and punctuation omitted.) *Smith v. U-Haul Co.*, 225 Ga.

App. 356, 357 (2) (484 SE2d 49) (1997). "The doctrine of res ipsa loquitur should be applied with caution and only in extreme cases; and it does not apply when there is an intermediary cause which could have produced the injury." (Citations omitted.) *Sams v. Wal-Mart Stores*, 228 Ga. App. 314, 316 (491 SE2d 517) (1997). In this case, Watts did not have exclusive control of the hinge in the public bathroom of a leased premises, and the failure of the hinge could have occurred in the absence of negligence. Id.; *Smith*, supra.

3. Watts asserts that its liability should be determined under the following Code section governing the liability of landlords:

> Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

OCGA § 44-7-14. Under this section, "[l]andlords still fully part with possession of leased premises when they retain limited entry or inspection rights for landlord-related purposes." (Citation omitted.) *Lake v. APH Enterprises*, 306 Ga. App. 317, 319 (702 SE2d 654) (2010). "Such limited rights do not evidence such dominion and control of the premises so as to vitiate the landlord's limited liability imposed by OCGA § 44-7-14 and replace it with the liability imposed by OCGA § 51-3-1."[1] Id. at 320. However, "if the landlord undertakes to inspect the property, he has a duty to repair any unsafe conditions which should have been discovered in the inspection." *Silman v. Assoc. Bellemeade*, 294 Ga. App. 764, 765 (2) (669 SE2d 663) (2008). "To say otherwise would be to impose absolute liability upon landlords for all defective conditions which could have been repaired before the injury." (Citation and punctuation omitted.) *Harris v. Sloan*, 199 Ga. App. 340, 341 (1) (405 SE2d 68) (1991).

In this case, Watts correctly asserts that there are no facts demonstrating that it should have discovered and repaired the hinge on the bathroom stall door before Martin's injury. It received no complaints about bathroom stall hinges before Martin's injury and discovered no problems with other bathroom stall hinges afterward. It is undisputed that the door fell because the hinge "sheared off,"

---

[1] This Code section provides: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

not because screws needed tightening. The fact that Watts's maintenance supervisor tightened screws on a different type hinge on a different style door does not create a genuine issue of fact as to whether Watts should have discovered a problem with this particular bathroom stall door hinge. Likewise, descriptions of other bathroom stall door hinges looking "rusted or discolored" without more do not create a genuine issue of fact with regard to Watts's duty to discover and repair any alleged defect or problem with this hinge.

Accordingly, we find that the trial court erred by denying Watts's motion for summary judgment under OCGA § 44-7-14. See *Silman*, supra, 294 Ga. App. at 765 (2); *Gainey v. Smacky's Investments*, 287 Ga. App. 529, 530-531 (2) (a) (652 SE2d 167) (2007).

4. To the extent OCGA § 51-3-1 could be applied in this case, we conclude that Watts is entitled to summary judgment in its favor under this Code section as well. In order to recover under OCGA § 51-3-1, Martin must show that Watts had either "actual or constructive knowledge of the hazard." *Thomas v. Deason*, 289 Ga. App. 753, 755 (658 SE2d 165) (2008). It is undisputed that Watts had no actual knowledge of any problem with bathroom stall door hinges.

Martin attempts to show constructive knowledge based upon her allegation that Watts did not have reasonable inspection procedures in place and its failure to keep adequate records of the inspections it did conduct. See *James v. Vineville Christian Towers*, 256 Ga. App. 72, 74 (567 SE2d 712) (2002). The record shows, however, that Watts conducted walk-through inspections of the building every two weeks and the bathrooms every six months. It had never received a report of any problems with any bathroom door hinges before Martin's injury, and there is no evidence that an inspection of the hinge would have revealed any defect. Instead, the evidence shows without dispute that the hinge "sheared off" without warning.

We find this evidence sufficient to establish that Watts conducted reasonable inspections of the property as a matter of law. The law does not require Watts "to conduct an inspection that disclosed every latent defect on the property. If this were the rule, then proprietors would be absolutely liable for all defective conditions on their property. The law does not impose such absolute liability. . . ." (Citations and punctuation omitted.) *James*, supra, 256 Ga. App. at 75. See also *Padilla v. Hinesville Housing Auth.*, 235 Ga. App. 409, 411-412 (509 SE2d 698) (1998) (affirming summary judgment to property owner when nothing in record showed inspection would have discovered defect in stairs). The trial court therefore erred by failing to grant summary judgment to Watts under OCGA § 51-3-1.

5. We express no opinion here as to the validity of Martin's claim for defective construction because we cannot determine from the record before us whether the trial court ruled on that claim when it

denied Watts's motion for summary judgment. The record shows that Martin amended her complaint to assert a claim for defective construction *after* Watts moved for summary judgment, and the record before us does not include a supplemental motion for summary judgment on this claim by Watts. In the absence of a transcript of the hearing on Watts's summary judgment motion showing that this ground was raised below or a specific ruling by the trial court, there is nothing for this court to review with regard to this theory of recovery.

*Judgment reversed. Mikell, C. J., and Dillard, J., concur.*

DECIDED NOVEMBER 29, 2011

*Mabry & McClelland, David T. Markle, James T. Budd, Brett A. Miller*, for appellant.

*Buzzell, Graham & Welsh, Neal B. Graham, Steven R. McNeel*, for appellees.