**FIRST DIVISION**
**BARNES, P. J.,**
**ELLINGTON, P. J. and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 30, 2017**

# In the Court of Appeals of Georgia

| | |
|---|---|
| A17A0281. ALDREDGE v. BYRD. | JE-012 |
| A17A0285. ALDREDGE v. WILSON. | JE-013 |
| A17A0296. ALDREDGE v. BYRD. | JE-014 |
| A17A0297. ALDREDGE v. ARNOLD. | JE-015 |
| A17A0298. ALDREDGE v. WILLIAMS. | JE-016 |
| A17A0299. ALDREDGE v. SMITH. | JE-017 |

ELLINGTON, Presiding Judge.

Marquita and Erica Byrd, Sade Wilson, Anthony Arnold, Timothy Smith, and Cawandle Williams filed suit against Phillip Aldredge in the State Court of Fulton County, seeking compensation for injuries they suffered as the result of a deck collapse on Aldredge's rental property. Following a hearing, the trial court denied Aldredge's motions for summary judgment. We granted Aldredge's applications for interlocutory appeal, and, for the reasons explained below, we reverse.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant [or denial] of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). Where a respondent who will not bear the burden of proof at trial moves for summary judgment and "point[s] out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the [claimant's] case[,]" the claimant "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." (Citations and punctuation omitted.) Id. at 623-624 (1) (a). The relevant facts that follow are undisputed unless otherwise noted.

2

Aldredge purchased 6340 Hollywood Drive, a single family home in Forest Park, Clayton County, in 1987. The record shows that, in 1988, not long after Aldredge bought the house, he hired a carpenter, John Templeman, to remove the existing back deck and build a new one. Neither Aldredge nor Templeman obtained a building permit for the deck construction. Although Aldredge did not direct or supervise the building of the deck, he knew that Templeman attached the deck to the house using nails and not bolts.[1]

Aldredge rented the house to Kenwardo Moore and Karen Kelly in February 2010. The tenants had exclusive possession of the premises under the terms of the rental agreement, and Aldredge agreed to maintain the property and retained the right to enter the property to make repairs, improvements, or periodic inspections as he

---

[1] We note that the trial court, the attorneys, and the witnesses used various terms for the part of the house's structure to which the deck was attached, including "rim joist," "rim board," "band joist," "band board," and "sill plate" We have carefully reviewed the entire record, including the speakers' extensive references to photographs, and conclude that it is undisputed that these references are to the same structure, that is, the wooden board that is part of the side of the house at the level of the floor joists and to which Templeman nailed the deck's ledger board, which is the corresponding board that is part of the side of the deck at the level of the floor joists. To avoid confusion in this decision, we have used the common term "rim joist" whenever a speaker refers to the part of the house's structure to which the deck was attached.

deemed necessary. The tenants agreed to notify Aldredge of any maintenance that needed to be done.

In 2010, shortly before or just after renting the house to Moore and Kelly, Aldredge replaced several deck boards, which had been stained with grease and/or charred by a prior resident.[2] Aldredge did not replace the ledger board or the deck floor board closest to the house. Aldredge deposed that, when he replaced the deck boards in 2010, he thoroughly inspected the deck, including the attachment and the condition of the ledger board and the supporting joists underneath the deck boards. He did not observe any rot or other defect during that inspection. In addition, he deposed that he was conscious that "[t]he deck set off the ground" and so on other occasions, whenever he went to the property to power wash the deck or do other maintenance, he always made a point of checking "the general condition of the deck, see if there's any rot, see if there's any movement, anything that was weak about it, the nails, were they in good shape, that kind of thing." Aldredge's repair work did not involve or uncover the house's rim joist, which remained concealed by the deck's ledger board. Aldredge deposed that he was aware that even pressure-treated lumber

---

[2] At the same time, Aldredge replaced the gutters. He deposed that the old "galvanized" gutters had "deteriorated" and "rusted" and that he replaced them with "nice aluminum gutters . . . with good hangers and that kind of thing."

4

will eventually need to be replaced and will lose its resistance to mold and rot, but he did not know how long that might take. He deposed that, before the deck collapsed, there was no evidence of any visible problem of any kind with the deck. The tenants never notified Aldredge of any problem related to the deck and had never experienced or observed any problems with the deck.

On March 19, 2011, Kelly hosted a barbeque. Kelly's daughter, Sade Wilson, and the five other appellees were among the guests who were out on the back deck when the deck broke away from the house, and the edge of the deck nearest to the house collapsed to the ground.

Dexter Norwood, a code enforcement officer with the Clayton County police department, inspected the premises on March 21, 2011. He deposed that he did not observe any defect in the deck, the exterior walls, or any other portion of the premises which would have been visible to or observable by anyone prior to the happening of the deck collapse on March 19, 2011. To Norwood's knowledge, the premises were in compliance with applicable building codes.[3]

---

[3] During his deposition, Aldredge stated that, at that time, he was aware that the building code then required bolts. He also deposed that he did not believe bolts would have prevented the collapse.

5

In addition, Aldredge also inspected the deck within days after it collapsed, and he observed that the rim joist appeared rotted and damaged. He deposed that, after the deck collapsed, he was told that there was no flashing, but that, before the deck collapsed, he had not known that Templeman did not use flashing during the construction of the deck.[4] He theorized that "if there had been flashing there, obviously water wouldn't have got to" the board that rotted and stated that, if he had known about the lack of flashing, he might have been more "suspicious" of the safety of the deck. Aldredge deposed that, even after the collapse, the deck itself still appeared sound and "solid as a rock" and that the only problem was that the rim joist, which supported the deck, had rotted.[5]

---

[4] Although the appellees assert that the absence of flashing was "obvious," they have identified no evidence from which a jury could infer that, after Templeman had attached the deck to the house, an observer could have discerned that he had not installed flashing to protect the structure from water incursion.

[5] Aldredge deposed that Paul Hardy, whom he believed to be the chief building inspector for Clayton County, was on the site that day and told him that there was nothing wrong with the deck itself and that the deck had pulled loose because water had gotten behind the ledger board and rotted the rim joist; Hardy, however, did not personally give any evidence in this case. He also deposed that another man, Jeff Tarbutton, said that a lack of flashing caused the rot; Tarbutton also did not personally give any evidence in this case

A man named George Harper inspected the deck approximately one month after it collapsed.[6] He found that the rim joist, the part of the house structure to which the deck was attached, had rotted and deteriorated. He deposed that that particular board likely would have been concealed by the deck's ledger board before the deck collapsed. He had no way of knowing whether any defect in the deck would have been observable by anyone prior to the deck collapse.

In denying Aldredge's motion for summary judgment, the trial court determined that Aldredge was an out-of-possession landlord, such that the guests must show pursuant to OCGA § 44-7-14 that their damages resulted either from failure to repair the premises or faulty construction of the premises.[7] Consequently, the guests cannot prevail by meeting the less stringent negligence standard applicable to premises owners and occupiers generally.[8] Applying OCGA § 44-7-14, the trial

---

[6] Although the appellees cited to Harper's deposition, and Aldredge described him as the appellees' "own hired expert witness," this Court cannot discern whether the appellees intend to offer him as an expert or whether he was qualified to inspect the deck.

[7] OCGA § 44-7-14 provides: "Having fully parted with possession and the right of possession, . . . the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair."

[8] See OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary

court determined that there was some evidence from which a jury could find that Aldredge should have known there was a need for repair and failed to do so.

1. Aldredge contends that there is no evidence that the deck collapsed because of faulty construction and no evidence that he had actual or constructive knowledge that the premises were in need of repair. As a result, he contends, he is entitled to judgment as a matter of law.

Because Aldredge was an out-of-possession landlord, pursuant to OCGA § 44-7-14 he is liable in tort only for a third party's damages that result either from faulty construction of the premises or from the landlord's failure to repair the premises. *Martin v. Hansen*, 326 Ga. App. 91, 92 (1) (755 SE2d 892) (2014).

Because the undisputed evidence shows that Aldredge hired an independent contractor to build the deck, he cannot be held liable for faulty construction. *Martin v. Johnson-Lemon*, 271 Ga. 120, 124 (2) (b) (516 SE2d 66) (1999) (Where a landlord hired an independent contractor to install a pool and did not supervise or direct the construction, under OCGA § 44-7-14, the landlord could not be held liable in tort for faulty construction of the pool.).

_____

care in keeping the premises and approaches safe.").

Turning to liability for a failure to repair, it is well-settled that the landlord is not an insurer of its tenants' safety, and liability arises only where the landlord is on notice of a defect and the consequent necessity for repairs. *Martin v. Hansen*, 326 Ga. App. at 92-93 (1); *Karle v. Belle*, 310 Ga. App. 115, 116 (712 SE2d 96) (2011); *Haynes v. Kingstown Properties, Inc.*, 260 Ga. App. 102, 103 (578 SE2d 898) (2003).

> Accordingly, if the landlord receives notice that the premises are not in repair, it has a duty to inspect and investigate in order to make such repairs as the safety of the tenant requires. This duty extends not only to tenants, but to those invited onto the leased property by a tenant. [A landlord], therefore, is liable to [a tenant's guests] for damages caused by its failure to exercise reasonable care in repairing a *known* dangerous condition. The required knowledge can be actual or constructive.

(Punctuation and footnotes omitted, emphasis in original.) *Haynes v. Kingstown Properties, Inc.*, 260 Ga. App. at 103.

In this case, Aldredge's testimony that he was unaware of any problem with the deck or its attachment to the house pierced the only factual allegation of negligence or causation asserted against him by disproving the knowledge element of the appellees' claims.[9] The appellees failed to adduce any evidence that Aldredge knew

---

[9] See *Martin v. Hansen*, 326 Ga. App. at 92-94 (1) (Where a tenant alleged that the landlords were negligent by failing to repair the defective top step of the flight of stairs and

or should have known that the deck was in need of repair. Given the absence of evidence that would authorize a jury to find that Aldredge failed to exercise reasonable care in repairing a known dangerous condition, the trial court erred in denying Aldredge's motions for summary judgment. *Silman v. Associates Bellemeade*, 294 Ga. App. 764, 765-766 (2) (669 SE2d 663) (2008), aff'd, 286 Ga. 27 (685 SE2d 277) (2009) (The landlord was entitled to summary judgment where there was evidence that, two months before the landlord's deck collapsed, a city inspector had inspected the property for safety pursuant to a local ordinance and examined the deck above and below and found no potential problems with the structure and where, although the tenant thought the deck seemed "wobbly," there was no evidence that the tenant ever reported that observation to the landlord or that the landlord was otherwise put on notice that the deck needed repair.).[10]

---

in failing to warn her of the stair's defective condition, the landlords' affidavit evidence that they were unaware of any abnormality regarding the height of the top stair or that it violated any building code "pierced the only factual allegation of negligence or causation asserted against them by disproving the knowledge element of [the tenant's] claims." Because the tenant adduced no evidence that the landlords observed any problem with the stairs or otherwise had notice of the allegedly defective condition of the stairs that caused the tenant's injury, the landlords were entitled to summary judgment.).

[10] See *Watts & Colwell Builders, Inc. v. Martin*, 313 Ga. App. 1, 6-7 (3) (720 SE2d 329) (2011) (The landlord was entitled to summary judgment where there was no evidence that, before the hinge on its bathroom stall door sheared off and the plaintiff was knocked

2. Aldredge contends that the trial court erred in denying his motions for summary judgment because it made certain erroneous factual assumptions, "in the absence of any competent evidence." Because we have reviewed the evidence de novo and determined that the trial court erred in concluding that there are genuine issues of material fact, any other errors in the trial court's analysis are moot.

*Judgments reversed. Barnes, P. J., and Mercier, J., concur.*

---

down, the landlord had received any complaints about the condition of the hinges or other notice of any need to repair the doors.); see also *Wingo v. Harrison*, 268 Ga. App. 156, 159 (601 SE2d 507) (2004) (Homeowners were entitled to summary judgment under OCGA § 51-3-1 for injuries caused by the collapse of deck where there was no evidence that the homeowners had observed that the wood had rotted or that they were otherwise on notice of any latent defect.); cf. *Thompson-Weinman & Co. v. Brock*, 144 Ga. App. 346, 348-350 (3) (241 SE2d 279) (1977) (The evidence presented a jury question, under the reasonable care standard provided in the predecessor to OCGA § 51-3-1, regarding whether a property owner breached a duty to inspect a wooden utility pole on the property, where the pole had been standing on the property for approximately forty years, the owner knew that utility poles could rot, and the owner had in his employ an electrician who inspected poles for rotting and reported his findings to the company so that it might correct any problems.).