**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**PINSON, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 7, 2022**

# In the Court of Appeals of Georgia

A21A1382. WCE HOLDINGS B, LLC v. LEWIS.

A21A1385. WCE HOLDINGS B, LLC v. WHITEHEAD, et al.

PINSON, Judge.

A deck attached to a rental home collapsed during a party. After the collapse, a concealed wooden beam where the deck had been attached to the house was exposed, and it appeared to have been damaged by water or termites. Six of the people injured in the collapse sued the landlord. But under OCGA § 44-7-14, a landlord not in possession of a rental property is not responsible for damages arising from defective construction or failure to repair if the landlord neither knew nor reasonably should have known about the defect in question. And here, the plaintiffs failed to introduce evidence from which a jury could conclude that the landlord knew or should have known about the damaged beam, which was undisputedly a but-for

cause of the collapse. They showed that the landlord inspected and made some aesthetic repairs to the deck before renting the property, but there is no evidence that those actions reasonably should have led to discovery that the hidden beam was rotten, or that the beam was likely damaged at the time. And they showed that the posts supporting the deck were not sunk into concrete footings, but they presented no evidence suggesting that the posts' construction should have prompted the landlord to cut into the house to inspect the beam. Without evidence from which a jury could conclude that WCE knew or reasonably should have known about the hidden damage, we must reverse the trial court's denial of summary judgment on this issue.

## Background

WCE Holdings B, LLC bought the home at issue in March 2015. The home was not inspected by a certified home inspector prior to purchase. However, William Ellis, the owner of WCE, brought Jamal Ingram, WCE's construction foreman, to assist him with inspecting the house and back deck prior to closing. The inspection did not reveal any issues with the deck supports. Ellis averred that at no time prior to the collapse did he or WCE have any knowledge of a structural problem with the deck.

Ellis testified that, prior to renting the home, WCE replaced some non-structural components of the deck, including "some" of the deck floor boards and railings, "[f]or aesthetic reasons only." Margarito Fernandez made these repairs ot the deck. Fernandez testified that he replaced the deck's railing and stairs, but did not replace the floor or the joists. He did not see the wooden beam attaching the deck to the house because it was concealed by decking. He observed that the metal posts supporting the deck sat on top of concrete foundations (instead of being sunken in the concrete) and, as a result, it was possible that the deck would move if several people were on it. However, Fernandez testified that the deck appeared to be stable to him when he worked on it in March 2015.

In May 2015, WCE leased the property to LaMarr Burns. The lease between WCE and Burns places the responsibility on the tenant to inform the landlord of any dangerous conditions or need for maintenance.

On June 25, 2017, Burns invited friends to his house for a social gathering. The deck suddenly collapsed under the weight of the guests, injuring some of the guests. Burns had not communicated any concern about the deck before it collapsed.

After the deck collapsed, a 16-foot wooden beam that connected the deck to the house was exposed, revealing damage by termites or water intrusion. Jamal Ingram,

WCE's foreman, explained that the damaged beam attaching the deck was not visible until the deck was removed because it was concealed by deck framing and was up against the house. Fernandez, WCE's repairman, opined that the deck collapsed because (1) there were a lot of people moving on the deck, (2) the interior beam attaching it to the house was damaged, (3) there was a lack of a support post next to the house and (4) the posts moved on concrete.

Michael Lewis, Johnny Whitehead, John Riggs, Trevin Strong, Dionte Starks and Anthony Dorsey sued WCE for injuries they sustained as a result of the deck's collapse. WCE then moved for summary judgment, which the trial court denied. The trial court treated WCE as an out-of-possession landlord subject to OCGA § 44-7-14, which limits the landlord's liability to damages arising from "defective construction" or the "failure to keep the premises in repair." The trial court acknowledged that all the witnesses agreed that the damaged wood "where the deck was secured to the house was not visible." But the court noted that a jury could credit testimony that the deck's support posts were "sitting on top of the concrete rather than sunk into the concrete," and it reasoned that "the entire concern about the posts is that they could cause the deck to be unstable under certain circumstances." Combined with the court's understanding that "water and termite damage are common occurrences for

4

any structure," the court determined that "a jury could conclude that the visibly defective posts should have prompted WCE to take further remedial action." WCE sought an interlocutory appeal, which we granted.

Discussion

Under OCGA § 44-7-14, a landlord not in possession of a rental property (like WCE here) is responsible only for damages arising from either "defective construction" or "the failure to keep the premises in repair." OCGA § 44-7-14; see *Gainey v. Smacky's Investments, Inc.*, 287 Ga. App. 529, 530 (2) (652 SE2d 167) (2007). Accord *Martin v. Johnson-Lemon*, 271 Ga. 120, 122 (1) (516 SE2d 66) (1999).

Here, WCE's liability under either of these theories depends on whether it knew or should have known about the relevant defect. An out-of-possession landlord may be liable for failure to repair under OCGA § 44-7-14 only if the landlord has actual or constructive knowledge of the dangerous condition. *Aldredge v. Byrd*, 341 Ga. App. 300, 304 (1) (799 SE2d 263) (2017); see also *Gainey*, 287 Ga. App. at 530 (2) (a) ("Liability for failure to repair arises only in instances where there is a duty to repair and notice has been given of the defect.") (punctuation and footnote omitted). As for defective construction, a landlord who wasn't involved with building the

5

property may be held liable only if the landlord "knew or by the exercise of reasonable diligence could have known," before the tenancy was created, of a "structural defect" of the kind that "would be discovered during a pre-purchase building inspection." *Gainey*, 287 Ga. App. at 531 (2) (b) (punctuation and footnote omitted). Accord *Rainey v. 1600 Peachtree, LLC*, 255 Ga. App. 299, 299 (565 SE2d 517).

The focus of this knowledge requirement here is the damaged beam that was the attachment point for the deck. Viewed in the light most favorable to the plaintiffs, the evidence showed that the deck's collapse resulted from some combination of (1) having a significant number of people on the deck, (2) the deck's posts not being sunk into the concrete, (3) a lack of deck supports up against the house, and (4) the damaged beam, which allowed the deck to pull away from the house. But that evidence also indicates that the deck would not have collapsed but for the damaged beam. This means that the damaged beam is a material defect that WCE had to have had actual or constructive notice of, before the deck collapsed, to be held liable as an out-of-possession landlord under OCGA § 44-7-14.

That, then, is our focus: to determine whether there is evidence from which a jury could conclude that WCE (a) knew or (b) should have known about the damaged

6

beam—and thus the dangerous condition the deck was in—before the deck collapsed. We undertake this review de novo, viewing the evidence and inferences drawn from it in the light most favorable to the plaintiffs. *Rainey*, 255 Ga. App. at 299.

(a) It is quite clear from the record that WCE did not have actual knowledge about the damaged beam. As the trial court noted, all of the witnesses agreed that the beam was not visible before the deck fell. Further, when inspecting the deck before the property was leased, neither the owner nor construction foreman of WCE saw any structural issues or problems. And Fernandez testified that when he made the aesthetic repairs to the deck in 2015, the deck appeared stable, and he did not see the beam because it was concealed behind the deck framing. Finally, the tenant never reported any issues with the deck to WCE.

The plaintiffs point to conflicting evidence about whether some of the deck's floor boards were replaced: although Fernandez, who made the repairs, testified that he replaced only railings and stairs, Ellis and Ingram thought some of the "deck flooring" was replaced. But this minor factual dispute is not material to the question whether anyone from WCE knew about the damaged beam. Even assuming Fernandez replaced some of the floor boards, there is no evidence that pulling up the floor boards could have exposed the beam in question. Fernandez agreed that, had he

7

replaced the floor, he could have seen "what was behind it," but the beam in question was not located "behind" (or rather, underneath) the floor boards—it was located on the side of the deck, *perpendicular* to the floor and hidden behind the deck *framing*. No one suggested that the framing was removed or replaced, or that any of the aesthetic repairs made to the deck would have otherwise exposed the beam. That the beam remained hidden during these repairs, whatever their scope, is confirmed by Fernandez's unrebutted testimony that he was never able to see the beam in question before the deck collapsed.

(b) Nor is there evidence from which a jury could conclude that WCE reasonably should have known about the damaged beam and the resulting hazard before the deck collapsed. See *Gainey*, 287 Ga. App. at 531 (2) (b) (landlord may become liable for defective construction by a predecessor if the landlord "knew or by the exercise of reasonable diligence could have known of the improper construction before [the] tenancy was created"); *Aldredge*, 341 Ga. App. at 304 (1) (out-of-possession landlord may be liable for failure to repair if the landlord has actual or constructive knowledge of the dangerous condition).The trial court reasoned that a jury could conclude that the support posts "sitting on top of the concrete" were "visibly defective posts" which, combined with water and termite damage being

8

"common conditions," should have "prompted" WCE to "take further remedial action."

But the evidence does not support this line of reasoning. First, the plaintiffs point to no evidence that the posts were "defective" merely because they were seated on top of concrete rather than sunk into it. And in fact, Fernandez testified that if he had discovered an issue with the deck's stability or structural soundness when repairing it, he would have alerted WCE so that it could have been repaired. He did not alert WCE when he saw the posts and made the requested repairs because he believed that the posts "were sufficient to support [the deck's] weight." Second, no evidence suggests that, on seeing such posts, a reasonably diligent inspection would have been expanded to search for this kind of hidden water or termite damage (which would have required cutting into the house ). See *Rainey*, 255 Ga. App. at 300 (out-of-possession landlord was not liable for plaintiff's injury on uneven steps and small landing when the condition of the steps and landing were not the type of structural defect that would have been discovered during pre-purchase building inspection). And in any event, there is no evidence that such an inspection before WCE leased the property would have turned up a *damaged* beam. The plaintiffs introduced no

9

evidence that the beam in question necessarily or even likely would have been damaged at that time.

This is not to say that a similar line of reasoning could not support liability based on constructive knowledge. The idea that an out-of-possession landlord's knowledge of one condition reasonably should have prompted discovery of another, otherwise hidden defect is sound in theory. See, e. g., *Davis v. All-State Homes & Props.*, 233 Ga. App. 60, 61 (503 SE2d 331) (1998) (landlord's knowledge that recent water leak had rotted some of a trailer's particle-board flooring raised jury issue about whether the landlord "knew or should have known about the latent hazardous condition of the floor's integrity" near the part of the floor that had rotted). But that kind of theory finds no support in the evidence of this case for the reasons we've just discussed. Put simply, the plaintiffs' theory that seeing the posts that supported the deck should have prompted discovery of the hidden damage here rests on speculation, not evidence from which a jury could conclude that WCE should have known about the dangerous condition. See *Lonard v. Cooper & Segrue Props., Inc.*, 214 Ga. App. 862 (449 SE2d 348) (1994) (landlord had no constructive knowledge of holes in ground because although landlord conducted general visual inspection of lot at time

tenant took possession, a reasonable inspection did not reveal fence post hole covered by leaves).

Because the plaintiffs have not presented evidence from which a jury could conclude that WCE knew or reasonably should have known about the damaged, hidden beam that led to the deck's collapse, and the contrary conclusion was the trial court's only basis for denying summary judgment, we must reverse the decision below. See *Aldredge*, 341 Ga. App. at 304 (1) (in a deck collapse case where tenant's guests sued landlord, summary judgment in favor of landlord warranted where the record contained no evidence that landlord had actual or constructive knowledge that the concealed interior rim joist connecting the deck to the house was rotten).

*Judgments reversed. McFadden, P. J., and Senior Appellate Judge Herbert E. Phipps, concur*.