**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 10, 2020**

# In the Court of Appeals of Georgia

A20A1352. WATSON v. DANA.

MERCIER, Judge.

In this premises liability action, Christina Watson sued Katherine Dana for damages sustained when Watson stepped into a concealed hole in the backyard of a rental home owned by Dana. Asserting that she lacked knowledge of the alleged hazard, Dana moved for summary judgment. The trial court granted Dana's motion, and Watson appeals. We reverse.[1]

---

[1] Dana has asked us to dismiss Watson's appeal on the ground that Watson failed to timely pay costs for preparation of the appellate record. Pursuant to Court of Appeals Rule 20, an "[a]ppellee shall be deemed to have waived any failure of the appellant to comply with the provisions of the Appellate Practice Act relating to the filing of the transcript of the evidence and proceedings or transmittal of the record to this Court, unless objection thereto was made *and ruled upon in the trial court prior to transmittal*." (emphasis supplied). The record shows that Dana filed a motion to dismiss in the trial court, citing Watson's delay in paying costs. Before the trial court ruled on the motion, however, the appellate record was transmitted to us.

Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. See *Witt v. Ben Carter Properties*, 303 Ga. App. 107 (692 SE2d 749) (2010). We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences in the light most favorable to the non-movant. See id.

So viewed, the record shows that Dana leased the rental home at issue to Mindy Wadley. On June 4, 2016, Wadley held a party at the house, which Watson attended. During the party, Watson walked into the backyard to visit with a friend, who was sitting in a group of chairs arranged in a circle. As she approached an empty chair, Watson stepped into a hidden, oblong-shaped hole. The hole was "about the size of [a] legal pad," deep enough that Watson's foot and ankle disappeared, and obscured by overgrown grass. Watson heard a "loud sharp noise" and sensed immediate pain. X-rays later revealed that her ankle was broken and a ligament was torn.

Watson sued Dana, alleging that Dana failed to exercise ordinary care in keeping the rental home premises in a safe condition. Dana moved for summary judgment, arguing that she had no knowledge of any hazardous condition on the

Accordingly, the motion to dismiss filed in this Court is DENIED. See Court of Appeals Rule 20; *Lipsteuer v. CSX Transp.*, 236 Ga. App. 806, n.1 (513 SE2d 532) (1999).

property, which was in the possession of Wadley, her tenant. The trial court agreed with Dana and granted the motion. This appeal followed.

Generally, a landlord that fully parts with possession of leased property is not liable to third parties injured on the property "unless it is shown that the damages resulted either from failure to repair the premises or faulty construction of the premises." *Gainey v. Smacky's Investments*, 287 Ga. App. 529, 530 (2) (652 SE2d 167) (2007) (citations and punctuation omitted). See also OCGA § 44-7-14 (defining tort liability of landlord). With respect to failure to repair, an "out-of-possession" landlord is liable "only in instances where there is a duty to repair and notice has been given of the defect." *Gainey*, supra at 530 (2) (a) (citation and punctuation omitted). A landlord that *retains* control over leased premises, however, may be liable "even without actual notice of the defect, if, in the exercise of ordinary care, he should have known of it." *Paul v. Sharpe*, 181 Ga. App. 443, 446 (2) (352 SE2d 626) (1987) (citation, punctuation, and emphasis omitted). Such landlord

> is under the responsibility of a general owner of real estate who holds out a general invitation to others to enter upon and use his property, and is bound to see that reasonable care is exercised to keep the portion thus retained by him reasonably safe and fit for the uses which he has invited others to make of it.

3

Id. at 445 (1) (citation and punctuation omitted). See also OCGA § 51-3-1 (imposing duty on landowner to exercise ordinary care to keep premises and approaches safe for invitees).

Wadley testified via affidavit that pursuant to their lease contract, Dana agreed "to provide for the maintenance of the outside [of the rental home], including the yard." To this end, Dana sent a man to the property to "perform the outside and yard maintenance." As described by Wadley: "During the term of my lease, I was never responsible, under our agreement[,] for the maintenance of the outside of the home, including the yard. Miss Dana never relinquished control of the outside." Wadley's testimony raises a question of fact as to whether Dana retained control over the backyard and thus owed a duty of ordinary care to keep the yard reasonably safe for invitees, such as Watson. See *Swainsboro v. Riner*, 195 Ga. App. 390, 391 (393 SE2d 519) (1990) (evidence created jury issue as to whether landlord had parted with possession of leased premises); *Paul*, supra at 444 (1) ("A guest of a tenant is an invitee upon the premises of the landlord where he is invited by the tenant and visits him in such premises.") (citation and punctuation omitted).

A factual issue also exists as to Dana's knowledge of the backyard hazard. As noted above, knowledge may be actual or, where a landowner should have known

4

about the hazard in the exercise of ordinary care, constructive. See *Paul*, supra at 446 (2). Watson has pointed to no evidence that Dana actually knew about the hole in the rental home's yard. But she offered proof that Dana did not act responsibly in taking care of the outside of the house. Dana admittedly did not inspect the yard for hazards or perform "work . . . in the back yard," and Wadley testified that Dana "was very poor at maintaining said yard." Moreover, Watson's testimony regarding the size of the hole and the overgrowth covering it would permit a reasonable jury to "infer both that [the hole] had been in existence for a substantial period of time and that it was large enough to have been observable during routine mowing and maintenance." *Lawless v. Sasnett*, 200 Ga. App. 398, 399 (408 SE2d 432) (1991).

Because questions of fact remain as to Dana's responsibility for maintaining the yard and her constructive knowledge of the hazard at issue, the trial court erred in granting her motion for summary judgment. See *Lawless*, supra; *Swainsboro*, supra (evidence that landlord maintained some control over building but failed to inspect the premises raised question of fact as to constructive knowledge of hazard). Compare *Witt*, supra at 110-112 (given landowner's exercise of ordinary care in routinely inspecting and carefully maintaining grassy median in shopping center, landowner was not charged with constructive knowledge of concealed, difficult-to-find hole in

5

median); *Lonard v. Cooper & Sugrue Properties*, 214 Ga. App. 862, 864 (449 SE2d 348) (1994) (no evidence that landlord had constructive knowledge of hole in tenant's yard; although landlord performed some maintenance work on the property, the work took place "in areas away from the area where [the tenant] fell"). Accordingly, we reverse.

*Judgment reversed. Miller, P. J., and Coomer, J., concur*.